## VICTOR TALKING MACH. CO. v. STRAUS et al.

(District Court, S. D. New York. March 23, 1915.)

PATENTS ☞212—LICENSES—POWER TO IMPOSE RESTRICTIONS.

A grant, for a fixed royalty paid in advance, of the right to use a patented article during the full term of the patent, when it is to become the property of the licensee if he has observed the terms of the license, is equivalent to a "sale," and the owner of the patent, having received full payment of the price, fixed by himself, cannot by a provision of the license restrict the right of the licensee to transfer the same for whatever consideration he may see fit. This is so, even though the patentee still has the right under its form of license to require the transferee to purchase from itself certain things adapted for use with the patented article.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 312–314; Dec. Dig. ☞212.

For other definitions, see Words and Phrases, First and Second Series, Sale.]

In Equity. Suit by the Victor Talking Machine Company against Jesse Isador Straus, Percy S. Straus, and Herbert W. Straus, individually and as copartners trading as R. H. Macy & Co. On motion to dismiss bill. Motion sustained.

Fenton & Blount, of Philadelphia, Pa. (Frederick A. Blount and Hector T. Fenton, both of Philadelphia, Pa., of counsel), for complainant.

Wise & Seligsberg, of New York City (Edmond E. Wise, of New York City, of counsel), for defendants.

AUGUSTUS N. HAND, District Judge. This is a motion to dismiss the bill of complaint, brought under rule 29 of the new equity rules (198 Fed. xxvi, 115 C. C. A. xxvi). The suit is for infringement of patents.

The complainant alleges that it is the owner of various patents covering the Victor talking machines and sound records, and that it has manufactured under these patents, and has appointed licensed dealers, with the right to convey the license to the public to use its machines and sound records only when a royalty has been paid of not less than $200 for the use of a machine, and of not less than that noted on the record for the use of a sound record. Every machine and sound record has accompanying it a notice of license to the foregoing effect, and also to the effect that the patented article is to be used only with the machines, sound boxes, sound records, and needles manufactured by the complainant. The license also provides that it is good only when the label containing the notice of license is attached to the machine. It likewise provides that the title to the patented goods remains in the Victor Talking Machine Company for the term of the patent having the longest term to run, and that upon the expiration of such patent the goods shall become the property of the licensee, if he shall have observed the conditions of the license. The license further provides that, upon violation of any of the terms of the license, the Victor Talking Machine Company may upon repayment of the amount of the

royalty, less 5 per cent. per annum for the use, retake the patented goods from the user. The complaint does not charge the defendants with having used the patented goods without labels, or with needles other than those manufactured by the complainant, but charges as the sole act of infringement that the defendants, though lawfully in possession of the patented articles, have exceeded the limited use granted by the license, in that they have sold the articles outright, in some cases for less than they have paid for the same to the licensed dealers, and are threatening to continue this course. The complainant alleges that by its system of marketing its patented machines and sound records it is enabled to obtain the benefit of its patents "at a minimum of cost to the licensee."

The real purpose of the license is obviously to maintain the market for the talking machines and sound records at the prescribed royalty, and the essential point involved is whether such a limitation of the use in the mode I have described is within the rights of the owner of the patents. I may say at the outset that, if the patentee has such a right under the patent law, there can be no doubt that this court, and not the state court, is the proper tribunal to adjudicate the issue between the parties. I also think that no provision of the Sherman Act or Clayton Act affects the matters at issue.

The infringement charged is for selling when defendants are alleged to possess nothing more than a nonassignable right to use. The whole dispute is as to the extent of the monopoly granted by the patent. There is no combination shown in restraint of trade or to fix prices, nor any contract substantially lessening competition. The only question is whether a patentee, who has once received his royalty covering the use of the patented article during the entire life of the patent, can by his license prevent the transfer of the use by his licensee in a case where upon the expiration of the patent there is a sale of the machine itself to the ultimate possessor, conditioned upon the observance of the terms of the license. If the patentee has such a right, I think an attempt to sell the machine in derogation of the license for a limited use is an infringement, and a remedy for infringement lies in the United States court, which has general jurisdiction over patent causes. As was said in Henry v. Dick Co., 224 U. S. 1, 32 Sup. Ct. 364, 56 L. Ed. 645, Ann. Cas. 1913D, 880, the complainant might have waived the tort and sued upon the contract of license itself; then the remedy would be at law in the state court. But he has chosen naturally the more adequate remedy. This being so, the issue is reduced to whether the right declared upon is one given by the patent law.

In the case of Henry v. Dick Co., the license read as follows:

"This machine is sold by the A. B. Dick Company, with the license restriction that it may be used only with the stencil paper, ink, and other supplies made by A. B. Dick Company, Chicago, U. S. A."

In that case, Sidney Henry sold to Miss Skou a can of ink suitable for use upon the patented mimeograph with knowledge of the above license agreement and with the expectation that it would be used in connection with said mimeograph. The court held by a divided vote of four to three, the Chief Justice and Justices Hughes and Lamar dis-

senting, that the act of Henry constituted an infringement of the patent.

In the case of Bauer v. O'Donnell, 229 U. S. 1, 33 Sup. Ct. 616, 57 L. Ed. 1041, 50 L. R. A. (N. S.) 1185, the notice of license was as follows:

"This size package of Sanatogen is licensed by us for sale and use at a price not less than one dollar ($1.00). Any sale in violation of this condition, or use when so sold, will constitute an infringement of our patent * * * under which Sanatogen is manufactured. * * * A purchase is an acceptance of this condition. All rights revert to the undersigned in the event of violation."

The Supreme Court decided this case by a divided vote. Mr. Justice Day, who did not sit in the case of Henry v. Dick, wrote the opinion, and the Chief Justice, Justice Hughes, and Justice Lamar (who dissented in the Dick Case) and Justice Pitney constituted the majority, and Justices McKenna, Holmes, Lurton, and Van Devanter, who were the majority in the Dick Case, constituted the minority. The patent law grants:

"To the patentee, his heirs or assigns, for the term of seventeen years, * * * the exclusive right to make, use, and vend the invention." R. S. § 4884 (Comp. St. 1913, § 9428).

The majority of the court in Bauer v. O'Donnell, supra, held that the patent law did not, under the exclusive right secured by the statute to "vend" a patented article, grant the right "to dictate the price at which subsequent sales of the article may be made" when a sale has once taken place. It is to be noticed that the license agreement in that case attempted to limit the use to cases in which a price of $1 should be paid upon all sales, and contained a clause revesting title in the patentee wherever the license agreement should be violated in this respect. The most striking difference between that case and the case at bar lies in the fact that here compliance with the license in respect to price or royalty is made a condition precedent to the passing of title, while in Bauer v. O'Donnell such compliance was made necessary to prevent the revesting of title by a condition subsequent.

This difference seems to me only formal. In fact, I can see no distinction between permanently parting with the use for a stipulated sum and parting with the title to a patented article, so far as the right to restrict the price to the consumer is concerned. But, if there is such a difference, it cannot, I think, be determined by whether the condition of the passing of title is precedent or subsequent, if in each event the title is designed ultimately to be in the licensee, provided he has paid the designated price. It will be said that a further difference between this case and Bauer v. O'Donnell lies in the fact that there the use granted was confessedly assignable, because the license agreement contemplated successive sales, while here the licensee was given no right, express or implied, to transfer the use. The point, however, upon which that case turned, was that the patentee had no further interest in the use, and, unless the licensee violated some provision of the license, he had parted with his interest in it because he had received the entire royalty. Such is the exact situation here.

The complainant, however, most urgently argues that the case of Henry v. Dick is not overruled and should determine my action in its favor. In Bauer v. O'Donnell that case is distinguished by Mr. Justice Day upon the ground that there the use of the machine granted was limited, in that it was to be with other articles than the patented apparatus. To quote his exact language:

"There is no showing of a qualified sale for less than value for limited use with other articles only, as was shown in the Dick Case. There was no transfer of a limited right to use this invention, and to call the sale a license to use is a mere play upon words."

In other words, the Dick Case must be restricted to the facts there presented, and cannot, in view of the later case of Bauer v. O'Donnell, be extended to cover a case like the present, when the patentee has permanently parted with the entire right to use and has no longer any interest in the royalties from subsequent sales. If the defendants should use the machines without complainant's needles, the rule laid down in the Dick Case would apply, but no such infringement is alleged. In other words, the interest of the licensor in the use is exhausted, except as to its right to have the machine used with the unpatented needles of its manufacture. As Mr. Justice Day further said in Bauer v. O'Donnell:

"The jobber from whom the appellee purchased had previously bought, at a price which must be deemed to have been satisfactory, the packages of Sanatogen afterwards sold to the appellee. The patentee had no interest in the proceeds of the subsequent sales—no right to any royalty thereon or to participation in the profits thereof. The packages were sold with as full and complete title as any article could have when sold in the open market, excepting only the attempt to limit the sale or use when sold for not less than one dollar. In other words, the title transferred was full and complete, with an attempt to reserve the right to fix the price at which subsequent sales could be made."

In the case of Bauer v. O'Donnell, I think the court felt the same difficulty in supporting the attempted restriction that courts have often found in giving effect to conditions that are repugnant to the general terms of a conveyance or devise. If this were a case of first impression, I might feel that no sufficient reason exists for holding that a patentee could not attach such limitations to the future use of his patented goods as he might choose, irrespective of whether he had received a full royalty or not. I think, however, the case of Bauer v. O'Donnell holds to the contrary.

I can, after careful consideration, see no difference, except a purely formal one, between that case and the one under consideration, and for this reason I am of the opinion that the bill must be dismissed.